**UNION ICE CORPORATIONS et, Plaintiffs v. NILES (City) et Defendants.**

Common Pleas Court of Trumbull County.

No. 40644. Decided December 30, 1942.

G. P. and M. E. Gillmer, Warren, for plaintiffs.

Jacob Clayman, Warren, assisting and acting city solicitor, for defendants.

## OPINION

By HOOPER, J.

The plaintiffs in their petition, among other averments which are not material to the issues in this case, allege that they are taxpayers of the defendant, the city of Niles, and rate payers of the electric light department of said city for electric current purchased from the city, and that they bring this action for themselves and for all other taxpayers and purchasers of electric current from the light department of said city.

Plaintiffs further allege that the defendant, the city of Niles, through the sale of electric current to the plaintiffs and other consumers created a surplus in the electric light department, and that the city, through its council, between the years 1926 and June 7, 1933, illegally transferred surplus moneys in said fund to the various other departments and agencies of said city.

The plaintiffs aver that said transfers were illegal and pray that said defendant city, the members of its council, and its proper agents, servants and officials, the defendants herein, be compelled to make an accounting of all the surplus funds and profits heretofore transferred out of said light department fund to the Mahoning Valley Sanitary District, or to any other funds of said city not connected with said light department, or maintained for the purpose of the operation and maintenance of the same; that said defendants be required to restore to the electric light fund of said city such sums of money as may be found by the court to have been illegally transferred out of said fund, and for all other and further relief to which these plaintiffs may be entitled in law or in equity.

To this petition of the plaintiffs the defendants filed their answer in which the city of Niles admits that it is in the business of selling electric current, and the other defendants admit that they are the duly elected or appointed officials of the city of Niles. Further answering in said defense, the defendants deny each and every other allegation of the plaintiffs' petition, and further allege, in said defense, that the city of Niles had not made unlawful transfers of funds from the electric light fund.

The defendants further answering in their defense styled "An Additional Defense", allege that the plaintiffs are now estopped from demanding relief prayed for in the petition, because they are chargeable with laches; that said plaintiffs have acquiesced for years in the manner of the operation of said light department of the city of Niles, and further allege that said electric light department has been well and properly conducted and managed.

The defendants then pray that the plaintiffs' petition be dismissed, at plaintiffs' costs.

The plaintiffs, in reply to the answer of the defendants, deny each and every allegation contained in the answer, except such as

are admissions of allegations contained in plaintiffs' petition.

The pleadings and evidence present for the court's consideration and determination this question:

"Shall the defendants be compelled to make an accounting of all surplus funds and profits transferred from the electric light department to the Mahoning Valley Sanitary District, or to any other funds of said city, between May 15, 1926 and June 7, 1933, and to restore to said electric light department fund such sums of money as may be found by the court to have been illegally transferred out of said fund?"

The evidence in this case consisted of stipulations, exhibits and the testimony of witnesses.

Different statutes pertinent to the issues herein were in effect during the aforesaid period from May 15, 1926 to June 7, 1933, and this period may be divided as follows: From May 15, 1926 until August 10, 1927; from August 10, 1927 until July 26, 1929 and from July 26, 1929 until June 7, 1933.

The evidence in this case discloses that there were two transfers made between May 15, 1926 and August 10, 1927, from the electric light department to water works sinking fund and to the safety fund. Assuming that the funds were properly in and belonged to the electric light department fund, at the time these transfers were made, there were in effect laws providing two different methods of transferring funds of a municipality from one fund to another and under certain conditions. The one method of transfer was provided for in §§2296 to 2301, inclusive of the General Code. These sections were originally enacted by House Bill 386, found in 95 **Ohio Laws, 371,** in 1902. **Section 2296** and §2300 were amended in 1913, volume 103, page 552. At the time of the two transfers, §2296 to §2301, inclusive, **GC,** read as follows:

"Sec. 2296. FUNDS MAY BE TRANSFERRED BY WHOM. The county commissioners, township trustees, the board of education of a school district, or the council, or other board having the legislative power of a municipality, may transfer public funds except the proceeds or balances of special levies, loans or bond issues under their supervision, from one fund to another, or to a new fund created under their respective supervision in the manner hereinafter provided, which shall be in addition to all other procedures now provided by law.

"Sec. 2297. RESOLUTION AND PETITION. A resolution of such officers or board shall be duly passed by a majority of all the members thereof, declaring the necessity therefor, and such officers or board shall file a petition in the court of common pleas of the county in which the funds are held. The petition shall set forth the name and amount of the fund, the fund or funds to which it is

desired to be transferred, a copy of such resolution with a full statement of the proceedings pertaining to its passage, and the reason or necessity for the transfer.

"Sec. 2298. NOTICE OF THE PETITION. The petitioner shall give notice of the filing, objects and prayer of the petition, and of the time when it will be for hearing. The notice shall be given by one publication in two newspapers of opposite politics, having a general circulation in the territory to be affected by such transfer of funds, preference being given to newspapers published within the territory. If there are no such newspapers, the notice shall be posted in ten most conspicuous places within the territory for the period of four weeks.

"Sec. 2299. HEARING AND OBJECTIONS. The petition may be heard at the time stated in the notice, or as soon thereafter as convenient for the court, but such cause shall be heard, upon request of the petitioners in preference to all other cases on the docket. Any person or persons, objecting to the prayer of such petition. shall file their objections in such cause on or before the time fixed in the notice for hearing, and they shall be entitled to be heard.

"Sec. 2300. TRANSFER UPON FINDING OF COURT. If upon the hearing the court finds that the notice has been given as herein required, that the petition states sufficient facts, that there are good reasons, or that a necessity exists for the transfer, and that no injury will result therefrom, it shall grant the prayer of the petition and order the petitioners to make such transfer. The court may make an order for the reimbursement, in whole or in part of the fund from which such transfer is made.

"Sec. 2301. FINDINGS TO BE ENTERED IN RECORDS. A copy of the findings, orders and judgments of the court, shall be certified by the clerk and entered on the records of the petitioning officers 'or board, and thereupon the petitioners may make the transfer of funds as directed therein. All costs of such proceeding shall be paid by the petitioners, except in case objections are filed, the court may order such objectors to pay all or a portion thereof as is just and equitable."

There was also in effect at the time of the aforesaid two transfers §3799 GC, reading as follows:

"By the votes of three-fourths of all the members elected thereto and the approval of the mayor, the council may at any time transfer all or a portion of one fund, or a balance remaining therein, except the proceeds of a special levy, bond issue or loan, to the credit of one or more funds, but there shall be no such transfer except among funds raised by taxation upon all the real and personal property in the corporation, nor until the object of the fund from which the transfer is to be effected, has been accomplished or abandoned."

It is apparent from the reading of this section that it has no application to the two transfers made in this period, for the reason that the funds transferred were not funds raised by taxation. The procedure outlined by §§2296 et seq., GC, as heretofore set forth, could be used to transfer funds during said period. Did the city and its officers comply with these statutes, to-wit: §§2296 et seq., GC, in making such transfers?

It is obvious from the stipulation made in this case that the city of Niles, through its officers, attempted to make these two transfers under authority of these sections, because, under transfer No. 1, the council of the city of Niles passed a resolution, No. 933, authorizing the transfer of the sum of $25,000.00 from the funds of the electric light department to the water works sinking fund. The solicitor made application to the Court of Common Pleas of Trumbull county for an order authorizing said transfer, and on June 15, 1926, the Court of Common Pleas granted the prayer of the application. In pursuance of said decree of the Court of Common Pleas, the city of Niles transferred said sum of $25,000.00 on June 28, 1926 from the electric light fund to the water works sinking fund. Part of the stipulation referring to the proceedings for said transfer, is as follows:

"The application further asserted that notice of the intention of said city to request such a transfer order had been previously published. However, the record of the case does not disclose that any publication was ever made, or that any service of process or service by publication or otherwise, was ever made upon anyone who might be interested in resisting the application."

This part of the stipulation questions the "notice" of the petition. **Section 2298 GC**, provides the methods of giving notice of the filing of the petition, and sets forth what the notice shall contain, and how it may be given. **Section 2300 GC**, provides in part:

"If, upon the hearing, the court finds that notice has been given as required * * * it shall grant the prayer of the petition and order the petitioners to make such transfer. * * *"

As heretofore stated, the Common Pleas Court on June 15, 1926, granted the prayer of the application and ordered the petitioners to make the transfer. It is to be presumed that upon the hearing of said cause, the court found that notice, required by §2298 GC, was given. This presumption cannot be rebutted by the statement in the stipulation heretofore quoted. The stipulation is not evidence that no notice was given on the filing of the application, as provided by law, but simply asserts that the record of the case does not disclose that any publication was ever made. To overcome the presumption of the court's order, authorizing the transfer,

the stipulation, to have any probative value, must state that no notice was given, rather than that the record does not disclose that any publication was ever made, etc. As a matter of fact, a witness, could have testified as to notice being given by publication, or by posting, as required under §2298 GC. This testimony would not necessarily become a part of the record in the case, so far as any entries are concerned, but it could satisfy the court that notice was given as provided by law. From reading the stipulation, this court cannot say that the Journal Entry of the Common Pleas Court of Trumbull county, dated June 15, 1926, stated that the court found: "that notice has been given as required." If the journal entry set forth such a finding, then the plaintiffs in this case could not collaterally attack said judgment of the Court of Common Pleas of Trumbull county on the question of notice. If said journal entry did not contain such a finding, then notice could be collaterally attacked in this proceeding, provided that there was no other record of notice having been given. In any event, the plaintiffs in this case, by stipulation or otherwise, did not offer evidence that no notice was given.

The burden of proof in this respect is upon the plaintiffs, and, failing to prove that no notice was given, the presumption created by the court's finding, June 15, 1926, is not rebutted.

In Transfer No. 2, the same procedure was followed as in Transfer No. 1, with the exception of the following statement relating to notice, as set forth in the stipulation, to-wit:.

"Service of process was attempted to be made in this case by inserting the following legal notice in the Niles Daily Times once a week for four consecutive weeks, commencing September 17, 1926:

" 'Legal Notice: The taxpayers of the City of Niles, Ohio, are hereby notified that Paul Z. Hodge, as Solicitor of the City of Niles,. Ohio, and acting on behalf of the Council of said City, has filed a petition in the Court of Common Pleas of Trumbull County. Ohio, praying that said City be granted permission to transfer $5000 from the Electric Light Fund of the Service Department to the Safety Fund. Said petition will be for hearing on the 17th day of October,. 1926, or as soon thereafter as may be convenient to the presiding judge. Paul Z. Hodge, Solicitor for the City of Niles, Ohio.' "

The aforesaid stipulation does not prove that notice was given in accordance with the statute, nor does it prove that notice was not given in accordance with the statute. When the Court of Common Pleas of Trumbull county, on October 18, 1926, granted the prayer of the application, it is presumed that the court found that notice was given as required by §2298 GC. Without any evidence offered by the plaintiffs that no notice was given, the presumption created by the court's finding on October 18, 1926, is not rebutted.

Item 15 of the stipulation is as follows:

"None of the resolutions and ordinances mentioned in Item 1 to 14 inclusive, supra, was published either prior or subsequent to the date of their enactment or adoption."

The court feels that the resolutions passed by the council of the city of Niles, respecting the aforesaid two transfers were before the Court of Common Pleas of Trumbull county, considered and passed upon by said court, and found to be in accordance with the law, and cannot now be questioned in this suit. Furthermore, the court is of the opinion that these resolutions were not of a general nature, and that they did not necessarily need to be published.

For the reasons heretofore given, and upon the assumption that the funds were properly in and belonged to the electric light department fund, the court feels that transfers No. 1 and 2 subsequently complied with the statutes and were lawfully made.

Sections 2296 and 2301, inclusive, and §3799 GC, were repealed in April, 1927, and §5625-13 GC, was then enacted. This statute was the only law (not appropriations items) in effect from August 10, 1927 until July 26, 1929, which permitted transfers from one fund to another, and was as follows:

"Sec. 13. No transfers shall be made from one fund of a subdivision to any other fund, by order of court or otherwise, except that transfers may be made from the general to special funds established for purposes within the general purposes of the general fund, and from such special funds to the general fund; but no transfers shall be made from any such special fund to the general fund, except of moneys theretofore transferred from the general fund. Such transfers shall only be made by authority of an appropriation in the annual or supplemental appropriation measure, or by resolution of the taxing authority adopted by a three-fourths vote. Before any transfer shall be made, the fiscal officer of the subdivision shall certify in writing that the amount so to be transferred is not encumbered by any obligation or appropriation, and is in the treasury or in process of collection. At the end of a fiscal year any balance in a special fund to which a transfer has been made shall revert to the general fund but not in excess of the amount that was originally transferred during such fiscal year. In determining the balance in the general fund at the close of such fiscal year, balances which have so reverted shall be included."

The evidence discloses that there were four transfers authorized by the council of the city of Niles between August 10, 1927 and July 26, 1929, from the electric light department to the water works sanitary fund, and designated in the stipulation, as numbers 3, 4, 5 and 6. Assuming that the funds were properly in and belonged to the

electric light department fund at the time such transfers were made, were the transfers legally made under this statute?

It is obvious that the above transfers were made from a special fund (a public utility fund) to a special fund (water works sinking fund). No such transfers were authorized under §5625-13, as originally enacted, and as above set forth. The court is therefore of the opinion that these transfers were illegally made.

Section 5625-13 GC was amended in 1929, 113 O. L., 670-673, and was amended to read as follows:

"TRANSFER OF FUNDS, HOW MADE.

"Sec. 5625-13. No transfers shall be made from one fund of a subdivision to any other fund, by order of the court or otherwise, except as hereinafter provided: * * *

"a. The unexpended balance in a bond fund that is no longer needed for the purpose for which such fund was created shall be transferred to the sinking fund or bond retirement fund from which such bonds are payable.

"b. The unexpended balance in any specific permanent improvement fund other than a bond fund, after the payment of all obligations incurred in the acquisition of such improvement, shall be transferred to the sinking fund or bond retirement fund of the subdivision; provided that if such money is not required to meet the obligations payable from such funds, it may be transferred to a special fund for the acquisition of a permanent improvement or improvements or, with the approval of the court of common pleas of the county wherein such subdivision is located, to the general fund of the subdivision.

"c. The unexpended balance in the sinking fund or bond retirement fund of a subdivision, after all indebtedness, interest and other obligations for the payment of which such fund exists have been paid and retired, shall be transferred in the case of the sinking fund to the bond retirement fund and in the case of the bond retirement fund to the sinking fund; provided that if such transfer is impossible by reason of the non-existence of the fund herein designated to receive the transfer, such unexpended balance, with the approval of the court of common pleas of the county wherein such subdivision is located, may be transferred to any other fund of the subdivision.

"d. Unless otherwise provided by law, the unexpended balance in any special fund, other than an improvement fund, existing in accordance with §5625-9, ¶(d), (f) or (g) or §5625-11 GC, may be transferred to the general fund or to the sinking fund or bond retirement fund after the termination of the activity, service or other undertaking for which such special fund existed, but only after the payment of all obligations incurred and payable from such special fund.

"e. Moneys may be transferred from the general fund to the sinking fund or the bond retirement fund to meet a deficiency in either of the latter funds.

"f. Moneys appropriated therefor may be transferred from the general fund of a subdivision to a fund authorized by §§5625-11 or 5625-12 GC, or to the proper fund of a district authority.

"Except in the case of transfers in accordance with paragraphs (e) and (f) of this section, transfers herein authorized shall only be made by resolution of the taxing authority passed with the affirmative vote of two-thirds of the members thereof."

This was the only law in effect (not appropriations items) which permitted transfers from one fund to another between July 26, 1929 and June 7, 1933. The evidence shows that there were eight transfers in said period from the electric light department to the water works sanitary fund and to the police and fire building fund, and designated in the stipulation as numbers 7 to 14, inclusive. Assuming that the funds were properly in and belonged to the electric light department fund at the times such transfers were made, were the transfers legally made under this statute?

It is apparent from a careful reading of this statute that the council of the city of Niles had no authority under said statute to make these transfers, and the court is of the opinion that said transfers were illegally made.

To what fund or funds did the revenue of the electric light department of the city of Niles belong between May 15, 1926 and June 7, 1933, the period pertinent to the issues in this case? There were three statutes in force during this period relating to what funds "shall" and "may" be established by municipalities: Section 5625-11 GC, provides:

"In addition to the funds provided for by §§5625-9 and 5625-12 GC, the taxing authority of a subdivision may establish with the approval of the bureau such other funds as may be necessary and desirable and may provide by ordinance or resolution that moneys derived from the specified sources other than the general property tax, shall be paid directly into such funds." (Emphasis ours.)

No evidence was introduced in this case showing that the city of Niles established any fund under this statute, and the court holds that no fund was established under this statute, and that the revenues derived from the operation of the electric light department did not belong to any fund established under this statute, for the reason that no fund was established under said statute.

Section 5625-12 GC, sets forth other special funds that may be established, with the approval of the bureau, by a municipality, and a careful reading of that statute indicates clearly that the revenue derived from the operations of the electric light department did not

belong to any fund established under this statute, and, in addition thereto, there is no evidence in this case that any fund was established under said section.

The other section of the statute relating to the establishment of funds is §5625-9 GC. This statute provides that:

"Each subdivision shall establish the following funds:"

and it sets forth in said section separate funds that shall be established under said section by a municipality. Only three of said funds could possibly be applicable to this case, to-wit:

"A. General Fund.

"F. A fund for each class of revenues derived from a source other than the general property tax, which the law requires to be used for a particular purpose.

"G. A special fund for each public utility operated by a subdivision."

To which of the aforesaid funds did the revenues from the electric light department of the city of Niles belong?

In the case of **The City of Niles et, Appellees v. The Union Ice Corporation et, Appellants, 10 OO 244,** the court held:

"In the operation of a public utility a municipality acts, not in a governmental capacity as an arm or agency of the sovereignty of the state, but in a proprietary or business capacity. In its proprietary capacity it occupies the same posture as that occupied by a private corporation engaged in business and as such is entitled to a reasonable profit."

And, in said case, in the second syllabus, it is held:

"A patron purchasing electric energy from a municipally owned electric light and power plant or system, occupies with respect to the purchase price paid the same position as if the purchase were made from a private corporation engaged in some business. The patron loses all interest in and control over the purchase price after it is paid, **and it becomes the exclusive property of the municipality with the right to use, transfer or divert it to any uses and purposes authorized by law.**" (Emphasis ours.)

And in said case, at page 244, the court held:

"This holding likewise disposes of the contention that the transfer of funds derived from the sale of electric energy prior to the effective date of §5625-13a GC (June 7, 1933), deprives the consumers of their property without due process of law. Since the proceeds derived from the sale of electric energy do not constitute a fund in

trust for the benefit of the consumers, the consumers acquire no property right therein, either prior or subsequent to the effective date of §5625-13a GC."

Following the holding in this case it follows that the revenues derived from the operation of the electric light plant of the city of Niles did not belong to a fund established under "F" of §5625-9 GC, because the revenues are not required to be used "for a particular purpose." It is obvious that the city of Niles established a fund under "G" of §5625-9 GC, known as "Electric Light Fund". However, I find no law which authorizes the revenues of the electric light department of the city of Niles to be paid directly into the "Electric Light Fund". Under §5625-9 GC, the "Electric Light Fund", established under "G", derives its funds by appropriation out of the general fund. The evidence in this case does not disclose that the funds in the "Electric Light Fund" were transferred by appropriation from the "General Fund" to the "Electric Light Fund". On the contrary, it is shown that the revenues were paid directly into the "Electric Light Fund". This is contrary to law, and the funds were not properly in the "Electric Light Fund".

**Section 5625-10 GC,** as pertains to the issues in this case, provides:

"All revenues derived from sources other than the general property tax, unless the law prescribes its use for a particular purpose, shall be paid into the general fund. * * *

"All revenue derived from a source other than the general property tax and which the law prescribes shall be used for a particular purpose, shall be paid into a special fund for such purpose. * * *

"Money paid into any fund shall be used only for the purposes for which such fund is established."

The aforesaid quotations from §5625-10 GC, were in effect from 1927 for and during the period of time covered in this case. The last quotation from said section simply means that money lawfully paid into any fund shall be used only for the purposes for which such fund is established. In this case the revenues were not lawfully paid into the "Electric Light Fund", and, therefore, could not be lawfully transferred from said "Electric Light Fund". Neither were the revenues required to be used for a particular purpose, and, therefore, could not be paid into any special fund for such purpose. Under this section, and under the law, the court is of the opinion that the revenues derived from the electric light department properly belong to and should have been deposited in the general fund of the city of Niles, and the council of the city of Niles was only required to appropriate and transfer so much money from the general fund to the "Electric Light Fund" as may be necessary for maintenance, enlargement, improvement, extension, operation and man-

agement of the electric light department.

The use of revenues from the electric light department is not comparable to the use of the revenues from a municipally owned water works. Specific statutes relate to water works, that have no application whatsoever to the use of funds derived from the operation of a municipally owned electric light department.

Notwithstanding the conclusion of the court that part of the funds transferred were illegally transferred, the court is of the opinion that the plaintiffs in this case cannot require said funds, which were transferred, illegally or otherwise, to be restored to the "Electric Light Fund", for the reason heretofore indicated, that the funds did not properly belong to the "Electric Light Fund", and therefore should not be restored to a fund to which they did not belong. It then follows that the plaintiffs are not now entitled to an accounting of said funds, so transferred.

The defendants in their defense styled "Additional Defense" alleged that the plaintiffs are estopped from demanding the relief prayed for in the petition because they are chargeable with laches. In **16 O. Jur., §37, page 589**; 10 R. C. L., 396; **Kaifer v. Ohio Leather Co., 122 Oh St 476**; and **Kemper v. Apollo Building & Loan Co., 11 O. C. C. (N. S.), 372**, it is held:

"Laches arises not from mere delay but from delay which results in such a disadvantage to the adverse party that to entertain the action would accomplish an inequitable result. In other words, laches is such neglect or omission to assert a right as, taken in conjunction with lapse of time and other circumstances, causes prejudice to the adverse party and therefore operates as a bar in a court of equity."

The proceedings for the transfer of funds in this case began May 15, 1926, and proceedings for the last transfer were begun July 26, 1932. During this period of time twelve other proceedings were had and transfers made, a few by proceedings in court and others by resolutions or ordinances of council. All together during this period the sum of about $400,000.00 was transferred from the electric light fund to other funds of the city of Niles. When application was made to the Court of Common Pleas for transfers of funds some notice was given of such proceedings to the public. In other instances the public had notice by proceedings of council and newspaper items referring to transfers. Suit was not filed in this case until August 28, 1936, practically three years after the last transfer involved in this case.

The evidence further shows, on the question of notice, that the state examiner, Mr. C. Lippencott, filed with the city of Niles on July 26, 1928, a report criticizing the transfers made from the electric light fund. Again the same state examiner filed a report with the city of Niles on May 14, 1931, setting forth that the transfers covered by said report were illegal, and again he filed a report

with the city of Niles on June 8, 1933, in which he again held that the transfers made in the period covered by said report, were illegal and contrary to law. The testimony was, that all of said reports of said examiner were commented upon by the newspaper having a general circulation in Niles.

It is evident that there was considerable lapse of time in connection with the facts of this case. Are there other circumstances which, if taken in conjunction with the lapse of time, caused prejudice to the defendants, and if so, are they sufficient to operate as a bar to plaintiff's action.

In addition to the facts heretofore set forth relating to lapse of time and notice, large sums of money were transferred from the surplus of the electric light fund to other funds and principally to the water works. The amount transferred belonged to the city with the right to use, transfer or divert it to any purpose, so long as same was in accordance with law. In this case the transfers were not in accordance with law. However, the city could have legally used the surplus if the proper procedure had been followed. There is no element of fraud in this case on the part of the officials of the city of Niles. It is obvious that they felt they exercised good judgment and that the transfers were made in the best interests of the city of Niles. Deficiencies existed in the water works fund. If transfers had not been made, additional taxes would have had to have been levied to carry the water works, or an increase in rates made There is no evidence of waste, extravagance or incompetence in connection with the water works of the city of Niles, and presumably the water works department needed all the moneys to operate it which it received from the electric light fund. The general public of the city of Niles was not injured or damaged in any manner by reason of the transfer of said funds. As a matter of fact, the general public was benefitted by said transfer for the reason that if said funds had not been used to carry the water works, other means would have had to have been used to raise the money, such as increasing the rate or raising the general tax, to secure the money.

As heretofore stated, the transfers in this case involved large sums of money. If the city of Niles were required to restore said sums it would be practically impossible for the city to secure the money to make restitution. At any rate, it would disrupt the financial structure of the city of Niles to an irreparable extent. The court finds that the facts in this case fall squarely within the definitions heretofore given of laches, and that the plaintiffs in this case are guilty of laches and are estopped from asserting their cause of action in this case.

For all the reasons heretofore given, the court finds the issues in this case in favor of the defendants and against the plaintiffs, at plaintiffs' costs.

Special entry.